**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | § § § | |
| *Plaintiff*, | § § | |
| v. | § § | **CASE No.: 7:20-CV-425** |
| **4.587 ACRES OF LAND, MORE OR LESS, SITUATE IN STARR COUNTY, STATE OF TEXAS, AND FLORENTINO LUERA, ET AL.,** | § § § § § § | |
| *Defendants.* | § | |

**DEFENDANT FLORENTINO LUERA'S RULE 71.1(i)(1)(C) MOTION TO DISMISS PLAINTIFF'S COMPLAINT IN CONDEMNATION AND DECLARATION OF TAKING**

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................................4

FACTS AND PROCEDURAL HISTORY ..........................................................................5

STANDARD OF REVIEW ...................................................................................................5

ARGUMENT ..........................................................................................................................5

    I.    The power of eminent domain is vested in Congress, which may impose binding limitations on the Executive. .................................................................................5

    II.    The taking described by the Government in this case exceeds statutory limits established by Congress. .........................................................................................8

CONCLUSION ....................................................................................................................12

# TABLE OF AUTHORITIES

Cases

*2,913.15 Acres of Land v. United States*, 350 F.2d 356 (5th Cir. 1965).........................................5

*Akin v. Missouri Gaming Com'n*, 956 S.W.2d 261 (Mo., 1997)......................................................9

*Bostock v. Clayton County, Georgia*, --- S. Ct. ---, 2020 WL 3146686 (2020) .............................8

*Cascabel Cattle Company, L.L.C. v. United States*, 955 F.3d 445 (5th Cir. 2020)........................8

*Catlin v. United States*, 324 U.S. 229 (1944) ............................................................................ 4, 6

*Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984).................................8

*F.D.I.C. v. Hurwitz*, 384 F.Supp.2d 1039 (S.D. Tex. 2005) ..........................................................6

*Flowers v. S. Reg'l Physician Servs. Inc.*, 247 F.3d 229 (5th Cir. 2001) .....................................9

*Kawasaki Kisen Kaisha Ltd. v. Regal-Beloit Corp.*, 561 U.S. 89 (2010) .....................................9

*Lockhart v. U.S.*, 136 S. Ct. 958 (2016)........................................................................................11

*Mena Films, Inc. v. Painted Zebra Productions, Inc.*, 2006 WL 2919517 (N.Y. Supp. 2006) ......9

*Multnomah Cty. v. Azar*, 340 F. Supp. 3d 1046 (D. Or. 2018) .....................................................7

*People ex rel. N.R.*, 139 P.3d 671 (Colo. 2006) ............................................................................8

*Ramos-Portillo v. Barr*, 919 F.3d 955 (5th Cir. 2019) ..................................................................8

*SAS Institute, Inc. v. Iancu*, 138 S.Ct. 1348 (2018) .....................................................................11

*Transohio Sav. Bank v. Director, Office of Thrift Supervision*, 967 F.2d 598 (D.C. Cir. 1992).....7

*U.S. ex rel. Tenn. Valley Authority v. Welch*, 327 U.S. 546 (1946)..............................................6

*U.S. v. 2,606.84 Acres of Land in Tarrant County, Tex.*, 432 F.2d 1286 (5th Cir. 1970) ..........5, 6

*United States House of Representative v. Burwell*, 185 F.Supp.3d 165 (D.D.C. 2016).................6

*United States v. 162.20 Acres of Land*, 639 F.2d 299 (5th Cir. 1981).......................................4, 6

*United States v. Kennedy*, 278 F.2d 121 (9th Cir. 1960) ...............................................................6

*United States v. MacCollom*, 426 U.S. 317 (1976) .......................................................................6

*United States v. Right to Use & Occupy 3.38 Acres of Land, More or Less, in City of Alexandria, State of Va.*, 484 F.2d 1140 (4th Cir. 1973)...........................................................................6

*W. Union Tel. Co. v. Penn. R.R. Co.*, 195 U.S. 540 (1904) .........................................................5

Statutes

10 U.S.C. § 284 ..............................................................................................................................10
16 U.S.C. § 3801(a)(9) ...................................................................................................................10
16 U.S.C. § 674 ..............................................................................................................................10
31 U.S.C. § 1301(a) .........................................................................................................................7
43 U.S.C. § 1592(a)(1) ...................................................................................................................10
43 U.S.C. § 1592(a)(3) ...................................................................................................................10
5 U.S.C. § 706(2) .............................................................................................................................8

Other Authorities

Consolidated Appropriations Act, 2008, Pub. L. No. 110-161, div. E, tit. II, 121 Stat. 1844 (2008) ........................................................................................................................................10
Consolidated Appropriations Act, 2012, Pub L. No. 112-74, div. D, tit. II, 125 Stat. 947 (2012)10
Consolidated Appropriations Act, 2013, Pub. L. No. 113-76, div. F, tit. II, 128 Stat. 5 (2013)...10
Consolidated Appropriations Act, 2014, Pub. L. No. 113-76, div. F, tit. II, 128 Stat. 249 (2014) ........................................................................................................................................10
Consolidated Appropriations Act, 2016, Pub. L. No. 114-113, div. F, tit. II, 129 Stat. 2524 (2016) ........................................................................................................................................10
Department of Homeland Security Appropriations Act, 2007, Pub. L. No. 109-295, tit. II, 120 Stat. 1359 (2007)........................................................................................................................10

Rules

FED. R. CIV. P. 71.1............................................................................................................................5
FED. R. CIV. P. 71.1(c)(2)(A) ............................................................................................................6
FED. R. CIV. P. 71.1(i)(1)(C) ............................................................................................................5

Treatises

3 Sutherland Statutory Construction § 64:4 & n.3 (8th ed. & 2020 Supp.)...................................7

**INTRODUCTION**

The Executive seeks to take Florentino Luera's property to build what it calls "*tactical infrastructure*, such as border walls, lighting, and roads…." Exh. 1 (Letter from U.S. Customs and Border Protection ("CBP") to Mr. Luera, June 16, 2020) (emphasis added). Plaintiff has no authority to take property except within limits set by the Legislative branch. *2,913.15 Acres of Land v. United States*, 350 F.2d 356, 359 (5th Cir. 1965) ("The exercise of the power of eminent domain is vested in the legislative branch of the Government."). Here, the Government identifies as its chosen source of funding the 2019 Consolidated Appropriations Act ("2019 CAA"), "Public Law 116-6, div. A, tit. II, Section 230, 133 Stat. 13, which appropriated the funds that shall be used for the taking." ECF Dkt. 1-1 at 2. On its face, the 2019 CAA only appropriates funds to construct "pedestrian fencing" and "levee pedestrian fencing," not the "border security tower, roads,…vehicle barriers, security lighting, cameras, sensors" or other related structures that the Government believes are needed to secure the border. ECF Dkt. 1-1, at 4. U.S. Customs and Border Protection ("CBP") did not ask for and did not receive from Congress any funds for "tactical infrastructure" in its Fiscal Year 2019 budget. Exh. 2, at CBP – PC&I – 22-23 (pdf pgs. 342-43) (U.S. Dep't of Homeland Security, CBP, Budget Overview, Fiscal Year 2019) ("The FY 2019 President's Budget does not include funding for enhancements to tactical infrastructure."). Moreover, when Congress appropriated funds for roads and other tactical infrastructure associated with fencing in 2007, 2008, 2012, 2013, 2014, 2016, and 2017 it said so explicitly. Absence of similar language in the 2019 CAA confirms that the taking is not authorized by Congress. This cause should be dismissed pursuant to Rule 71.1(i)(1)(C). *See United States v. 162.20 Acres of Land*, 639 F.2d 299, 303 (5th Cir. 1981) (taking disallowed where the Government "departs from the statutory limits") (quoting *Catlin v. United States*, 324 U.S. 229, 240 (1944)).

## FACTS AND PROCEDURAL HISTORY

On or about June 16, 2020, CBP informed Mr. Luera that it had identified his property as a desired site for the construction of "tactical infrastructure, such as border walls, lighting, and roads…." Exh. 1, at 1. The Government sought to obtain an Offer to Sell the property that is the subject of this condemnation action from Mr. Luera. *Id*. Mr. Luera declined and Plaintiff filed this condemnation action on December 18, 2020. ECF Dkt. 1. The Government's stated public purpose for this taking is "to construct, install, operate, and maintain a border security tower, roads, fencing, vehicle barriers, security lighting, cameras, sensors, and related structures…." ECF Dkt. 1-1, at 4. Plaintiff identifies that 2019 CAA as the exclusive source of funding for this taking. *Id*., at 2.

On or about December 23, 2020, the undersigned counsel agreed to accept service of this action on behalf of Florentino Luera and received copies of pleadings from Plaintiff's counsel.

## STANDARD OF REVIEW

Proceedings to condemn real property are governed by Fed. R. Civ. P. 71.1. This rule provides that "[a]t any time before compensation has been determined and paid, the court may, after a motion and hearing, dismiss the action as to a piece of property." Fed. R. Civ. P. 71.1(i)(1)(C).

The Court may invalidate a taking and dismiss a takings action when the taking is inconsistent with the statutory text that the Government cites as authority for the taking. *See Catlin v. United States*, 324 U.S. 229, 240 (1945); *see also U.S. v. 2,606.84 Acres of Land in Tarrant County, Tex.*, 432 F.2d 1286, 1290 (5th Cir. 1970); *U.S. v. 1.16 Acres of Land, more or less situate in Cameron County, Tex.*, 585 F.Supp.2d 901, 906 (S.D. Tex. 2008).

## ARGUMENT

**I.    The power of eminent domain is vested in Congress, which may impose binding limitations on the Executive.**

The Supreme Court has long recognized the threat that eminent domain poses to individual property interests, and the need for limitations on the Executive's ability to condemn private property. *See W. Union Tel. Co. v. Penn. R.R. Co.*, 195 U.S. 540, 569 (1904) ("The exercise of the power of eminent domain is against common right. It subverts the usual attributes of the ownership of property. It must, therefore, be given in express terms or by necessary implication."). The exercise of the power of eminent domain is therefore vested in the Legislative branch, which delegates that authority to the Executive with important limitations. *2,913.15 Acres of Land v. United States*, 350 F.2d 356, 359 (5th Cir. 1965) ("The exercise of the power of eminent domain is vested in the legislative branch of the Government.").

Congress generally defines the purpose for a given use of eminent domain power by enacting legislation authorizing the acquisition of specific property for a particular project. *See, e.g., U.S. v. 2,606.84 Acres of Land in Tarrant County, Tex.*, 432 F.2d 1286, 1289-91 (5th Cir. 1970). Congressional appropriations of money also place important limits on the Executive's authority to incur obligations and to make payments, including payments of just compensation for takings. *See United States v. MacCollom*, 426 U.S. 317, 321 (1976) ("The established rule is that the expenditure of public funds is proper only when authorized by Congress, not that public funds may be expended unless prohibited by Congress."); *F.D.I.C. v. Hurwitz*, 384 F.Supp.2d 1039, 1093 (S.D. Tex. 2005) ("…agencies may spend appropriated funds only as Congress says."); *United States House of Representative v. Burwell*, 185 F.Supp.3d 165, 168 (D.D.C. 2016) ("Authorization and appropriation by Congress are nonnegotiable prerequisites to government spending."); *See* 31 U.S.C. § 1301(a) ("Appropriations shall be applied only to the objects for which the appropriations were made except as otherwise provided by law."). The Government's power to condemn is "coextensive with [its] power to purchase." *U.S. ex rel. Tenn. Valley Authority v. Welch*, 327 U.S.

546, 554 (1946). The Government's take must "come[] within the class of expenditures that Congress intended to authorize" to be properly authorized by appropriations legislation. *United States v. Right to Use & Occupy 3.38 Acres of Land, More or Less, in City of Alexandria, State of Va.*, 484 F.2d 1140, 1142 (4th Cir. 1973) (citing *United States v. Kennedy*, 278 F.2d 121 (9th Cir. 1960)).

When Congress imposes limits on authority to condemn property, the Executive is not free to disregard those limits. "It is clear that a condemnee may challenge 'the validity of the taking for departure from the statutory limits.'" *United States v. 162.20 Acres of Land*, 639 F.2d 299, 303 (5th Cir. 1981) (quoting *Catlin v. United States*, 324 U.S. 229, 240 (1944)); *accord* FED. R. CIV. P. 71.1(c)(2)(A) (Every condemnation complaint must state "the authority for the taking.").

The authorities permitting challenge to condemnation for lack of statutory authorization are consistent with the Administrative Procedure Act ("APA"), which requires reviewing courts "to hold unlawful and set aside agency action…in excess of statutory…authority…." 5 U.S.C. § 706(2). "It is 'central to the real meaning of the rule of law, [and] not particularly controversial' that a federal agency does not have the power to act unless Congress, by statute, has empowered it to do so." *Transohio Sav. Bank v. Director, Office of Thrift Supervision*, 967 F.2d 598, 621 (D.C. Cir. 1992) (citations omitted). "Agency actions beyond delegated authority are '*ultra vires*,' and courts must invalidate them." *Id.*; *see also Multnomah Cty. v. Azar*, 340 F. Supp. 3d 1046, 1070 (D. Or. 2018) (APA injunction remedying erroneous interpretation of appropriation act). The Government acts *ultra vires* here because it violates limitations included in the 2019 CAA and the Court should invalidate the taking. Defendant Florentino Luera invokes the APA as a defense to the taking. ECF Dkt. 9, at ¶ 20.

Because eminent domain necessarily involves a government agency exercising power to

interfere with individual property rights, "courts strictly construe grants of the eminent domain power against the condemnor grantee and in favor of the condemnee property owner." 3 Sutherland Statutory Construction § 64:4 & n.3 (8th ed. & 2020 Supp.) (collecting authorities).

## II. The taking described by the Government in this case exceeds statutory limits established by Congress.

The Government claims that the taking at issue here is authorized by the 2019 CAA, "which appropriated the funds that shall be used for the taking." ECF Dkt. 1-1, at 2. But the 2019 CAA provides that funds "shall be available *only*" for the "construction of primary pedestrian fencing, including levee pedestrian fencing, in the Rio Grande Valley Sector." Pub. L. 116-6 § 230(a)(1) (emphasis added). The public purpose identified by the Government for the taking at issue here extends beyond what Congress authorized. The Government takes Florentino Luera's property "to construct, install, operate, and maintain a border security tower, roads, fencing, vehicle barriers, security lighting, cameras, sensors" and other related structures. ECF Dkt. 1-1, at 4; ECF Dkt. 2-1, at 4. This is inconsistent with the plain text of the 2019 CAA, its structure, and its legislative history. The taking described by the Government in this case improperly ignores limits that Congress placed on the Executive's condemnation authority.

Courts interpret federal statutes in accord with the ordinary public meaning of its terms at the time of its enactment. *Bostock v. Clayton County, Georgia*, 140 S. Ct. 1731, 1738 (2020); *Cascabel Cattle Company, L.L.C. v. United States*, 955 F.3d 445, 451 (5th Cir. 2020). "[I]f the text of the statute is clear, 'that is the end of the matter; for the court, as well as the [agency], must give effect to the unambiguously expressed intent of Congress." *Ramos-Portillo v. Barr*, 919 F.3d 955, 958–59 (5th Cir. 2019) (*quoting Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984)).

Section 230(a) of the 2019 CAA provides that fiscal year 2019 Treasury funds:

8

> shall be available only as follows:
> (1) $1,375,000,000 is for the construction of primary pedestrian fencing, including levee pedestrian fencing, in the Rio Grande Valley Sector;
> (2) $725,000,000 is for the acquisition and deployment of border security technologies and trade and travel assets and infrastructure, to include $570,000,000 for non-intrusive inspection equipment at ports of entry; and
> (3) $270,222,000 is for construction and facility improvements, to include $222,000,000 for humanitarian needs, $14,775,000 for Office of Field Operations facilities, and $33,447,000 for Border Patrol station facility improvements.

Public Law 116-6, div. A, tit. II, Section 230(a), 133 Stat. 13 (2019).

"Only" means that items not included are specifically excluded. *See, e.g., People ex rel. N.R.*, 139 P.3d 671, 683 (Colo. 2006) (construing a statute that dealt with the circumstances under which a district attorney could be disqualified and holding that "[t]he word 'only' in the statute represents an unequivocal statement that this list is meant to be exhaustive") (emphasis added); *Mena Films, Inc. v. Painted Zebra Productions, Inc.*, 2006 WL 2919517 at *2 (N.Y. Supp. 2006) ("exclusive and mandatory forum selection clauses must have language (e.g., the word 'only') that 'mandates that the designated courts are the only ones which have jurisdiction'"); *Akin v. Missouri Gaming Com'n*, 956 S.W.2d 261, 263 (Mo., 1997) ("The word 'only' means 'exclusively, solely.'"); *see generally* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS at 93 (2012) (under the canon of *casus omissus*, a matter not covered by a statute should be treated as intentionally omitted).

Subsection (1) of the 2019 CAA provides funds "only…for the construction of *primary pedestrian fencing*, including *levee pedestrian fencing*, in the Rio Grande Valley sector." Pub. L. 116-6, § 230(a)(1) (2019) (emphasis added). Absent from this language is any reference to Plaintiff's identified public purpose of "construct[ing], install[ing], operat[ing], and maintain[ing] a border security tower, roads,…vehicle barriers, security lighting, cameras, sensors, and related

9

structures….ced" ECF Dkt. 1-1, at 4. The plain meaning of the word "fencing" does not authorize roads or other infrastructure that is not a barrier. Consistent with the plain meaning of "fencing," many statutes make clear distinctions between "fences" and "roads." *See, e.g.,* 10 U.S.C. § 284; 16 U.S.C. § 674; 16 U.S.C. § 3801(a)(9); 43 U.S.C. § 1592(a)(1); 43 U.S.C. § 1592(a)(3). "Where the text permits, congressional enactments should be construed to be consistent with one another." *Kawasaki Kisen Kaisha Ltd. v. Regal-Beloit Corp.*, 561 U.S. 89, 108 (2010); *see also Flowers v. S. Reg'l Physician Servs. Inc.*, 247 F.3d 229, 233 (5th Cir. 2001) ("…[I]n determining meaning of particular statutory provision, it is helpful to consider interpretation of other statutory provisions that employ the similar language.").

Legislative history only confirms that Congress meant what it said in statutory text: money is available for the construction of fencing, but not roads or other associated infrastructure. In prior appropriations, Congress repeatedly authorized the use of funds in connection with border security infrastructure apart from fencing. For example, in fiscal years 2007, 2008, 2012, 2013, 2014, and 2016, Congress appropriated funds broadly for "border protection fencing, infrastructure, and technology." *See* Department of Homeland Security Appropriations Act, 2007, Pub. L. No. 109-295, tit. II, 120 Stat. 1359 (2007) ("expenses for customs and border protection fencing, infrastructure, and technology"); Consolidated Appropriations Act, 2008, Pub. L. No. 110-161, div. E, tit. II, 121 Stat. 1844 (2008) (same); Consolidated Appropriations Act, 2012, Pub L. No. 112-74, div. D, tit. II, 125 Stat. 947 (2012) (same); Consolidated Appropriations Act, 2013, Pub. L. No. 113-76, div. F, tit. II, 128 Stat. 5 (2013) (same); Consolidated Appropriations Act, 2014, Pub. L. No. 113-76, div. F, tit. II, 128 Stat. 249 (2014) (same); Consolidated Appropriations Act, 2016, Pub. L. No. 114-113, div. F, tit. II, 129 Stat. 2524 (2016) (same). In 2017, Congress specifically authorized "new border road construction" through its appropriations legislation. *See*

Consolidated Appropriations Act, 2017, Pub. L. No. 115-31, div. F, tit. II, 131 Stat. 434 (2017). If Congress wanted to authorize the use of fiscal year 2019 funds for the construction of roads along the border, it knew how to do so. The fact that Congress did not include the same authorization in the 2019 CAA indicates its specific intent to limit the Executive's expenditure of funds through eminent domain proceedings. *See SAS Institute, Inc. v. Iancu*, 138 S.Ct. 1348, 1355 (2018) ("Congress's choice to depart from the model of a closely related statute is a choice neither we nor the agency may disregard.").

In its own Fiscal Year 2019 budget overview, CBP uses the term "tactical infrastructure" to refer to new roads constructed along the border. *See* Exh. 2, at CBP – PC&I – 40 (pdf pg. 360) ("Tactical Infrastructure supports the design, real estate planning, environmental planning and acquisition, construction and construction oversight for new roads on the southwest border, as well as the replacement of border fencing."). The agency uses the same term to describe "lighting and roads" in communications prior to the filing of this lawsuit with Mr. Luera. Exh. 1, at 1. CBP did not seek authorization from Congress to construct new roads with fiscal year 2019 funds. CBP's proposed budget did not include a request for "tactical infrastructure." *See, e.g.,* Exh. 2., at CBP – 16 (pdf pg. 17); *Id.*, at CBP – PC&I – 22-23 (pdf pgs. 342-43). Given the unambiguous text of the 2019 CAA authorizing only the construction of *fencing*, Congress's departure from the historical practice of explicit authorization for related tactical infrastructure like roads, and the fact that the Government did not even seek authorization from Congress to use the fiscal year 2019 funds to construct roads or other tactical infrastructure, it is clear that Plaintiff's purpose for the taking falls well outside of what Congress has authorized.

The Government may argue that the tactical infrastructure appropriation appears in Subsections (2) and (3) of the 2019 CAA. Not so. Subsection (1) is the only part of the statute

11

that addresses border barriers. The only "infrastructure" addressed in Subsection (2) pertains to "trade and travel," including ports of entry, both of which are distinct from the border barriers addressed in Subsection (1). *See Lockhart v. U.S.*, 136 S. Ct. 958, 962 (2016) (Under the "rule of the last antecedent," qualifying words or phrases modify only the words or phrases immediately preceding them.). Subsection (3) is limited to construction and improvement of specific facilities, none of which can be construed to include roads adjacent to border fencing.

## CONCLUSION

For the foregoing reasons, Defendant respectfully prays that this Court dismiss the Government's Complaint in Condemnation and Declaration of Taking.

Dated: January 13, 2020

Respectfully submitted,

TEXAS RIOGRANDE LEGAL AID, INC.

*/s/ Peter McGraw*
Peter McGraw
Attorney in Charge
Texas Bar No. 24081036
S.D. Tex. No. 2148236
1206 East Van Buren St.
Brownsville, Texas 78520
Phone: (956) 982-5543
Fax: (956) 541-1410
pmcgraw@trla.org

## CERTIFICATE OF SERVICE

I hereby certify that I served a copy of the foregoing document on counsel for Plaintiff in this matter by filing the same with the court's electronic filing system on January 13, 2020. I hereby certify that I will serve a copy of the foregoing document on the known heirs identified in Plaintiff's Schedule G at the addresses listed therein by certified mail, return receipt requested.

*/s/ Peter McGraw*
Peter McGraw