IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, § § *Plaintiff,* § § v. § § 4.587 ACRES OF LAND, MORE OR § LESS, SITUATE IN STARR COUNTY, § STATE OF TEXAS; AND FLORENTINO § LUERA, *et al.*, § § *Defendants.* § | CASE NO.   7:20-CV-425 |

**UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS, CROSS-MOTION TO STRIKE IMPROPER DEFENSES, AND MEMORANDUM IN SUPPORT**

## I.   INTRODUCTION

1. The United States respectfully opposes Defendant's, Florentino Luera, ("Landowner"), Motion to Dismiss ("Motion").[1] In addition, pursuant to Rules 12(f) and 71.1(h) of the Federal Rules of Civil Procedures, and Local Rule 7.1, the United States respectfully cross-moves this Court to strike all objections, defenses and demands set forth in the landowner's Answer[2] as legally insufficient.

2. On December 18, 2020, the United States initiated this condemnation proceeding to acquire 4.587 acres in Starr County to help secure the United States/Mexico border and to determine the amount of just compensation that must be paid for the property taken. Complaint:[3]

---

[1] Dkt. No. 10.
[2] Dkt. No. 9.
[3] Dkt. No. 1.

Page 1 of 17
*United States' Opposition to Defendant's Motion to Dismiss,
Cross-Motion to Strike Improper Defenses, and Memorandum in Support*

Declaration of Taking, Schedule B.[4] On January 13, 2021, the United States deposited the estimated amount of just compensation into the Registry of the Court.[5] In his recently filed Motion pursuant to Rule 71.1(i)(1)(C),[6] the Landowner argues: (1) that the power of eminent domain is vested in Congress, which may impose binding limitation on the Executive, and (2) that the taking described by the Government in this case exceeds statutory limits established by Congress.

3.      As a preliminary matter and as explained below, Rule 71.1(e)(2) does not permit a landowner to move to dismiss a condemnation action. *See also* Fed. R. Civ. P. 71.1(e) (defendant may serve either a notice of appearance or an answer but "[n]o other pleading or motion asserting any additional defense or objection is allowed").[7] Furthermore, the Landowner failed to include and consider the complete text of Fed. R. Civ. P. 71.1(i)(1)(C) in the standard of review provided in his motion to dismiss.[8] Fed. R. Civ. P. 71.1(i)(1)(C) provides that "[a]t any time before compensation has been determined and paid, the court may, after a motion and hearing, dismiss the action as to a piece of the property. But if the plaintiff has already taken title, a lesser interest, or possession as to any part of it, the court must award compensation for the title, lesser interest, or possession taken."[9] Here the United States has already taken title to the property after filing its Declaration of Taking[10] and depositing the estimated amount of just compensation into the Registry of the Court[11] in accordance with 40 U.S.C. § 3114.[12] Therefore, the Court should dismiss the landowner's Motion as improper.

---

[4] Dkt. No. 2-1.
[5] Dkt. No. 11.
[6] Dkt. No. 10.
[7] Fed. R. Civ. P. 71.1(e).
[8] Dkt. No. 10 at 5.
[9] Fed. R. Civ. P. 71.1(i)(1)(C).
[10] Dkt. No. 2.
[11] Dkt. No. 11.
[12] *See* 40 U.S.C. § 3114(b)(1).

Page 2 of 17
*United States' Opposition to Defendant's Motion to Dismiss,
Cross-Motion to Strike Improper Defenses, and Memorandum in Support*

4. Further, in his Motion the Landowner does not challenge the Government's stated public purpose, but rather, argues that the Government's stated public purpose exceeds the statutory limits imposed by Congress through Congress' authority to appropriate funds. More specifically, the Landowner claims that the Government's taking is inconsistent with the plain text of Section 230(a)(1) of the Consolidated Appropriations Act of 2019, Public Law 116-6, div. A, tit. II, Section 230(a), 133 Stat. 13, approved February 15, 2019 and which appropriated the funds that shall be used for the taking.[13] The Landowner asserts that Congress appropriated funds "only" for the construction of primary pedestrian fencing, including levee pedestrian fencing in the Rio Grande Valley Sector, but not for the Government's stated public purpose, which is to construct, install, operate, and maintain roads, fencing, vehicle barriers, security lighting, cameras, sensors, and related structures designed to help secure the United States/Mexico border within the State of Texas.[14] The Landowner's reading of this statute, is incomplete and incorrect, and the Motion therefore is without merit.

5. Federal condemnation law, which the Landowner incorrectly asserts does not apply, is clear that a taking by the federal government need only to be rationally related to a stated public purpose, and reasonably necessary to accomplish the acts authorized by Congress. Furthermore, the language included in the Act of Congress approved February 15, 2019, which appropriated the funds that shall be used for the taking,[15] is rationally related to the United States' stated public purpose and consistent with securing the United States' border with Mexico.

6. Finally, in condemnation actions defenses serve only to challenge the legal validity of the taking. Accordingly, the Court should dismiss the landowner's Motion and strike the

---

[13] Public Law 116-6, div. A, tit. II, Section 230(a)(1), 133 Stat. 13 (2019).
[14] Dkt. No. 10 at 8, 10.
[15] Public Law 116-6, div. A, tit. II, Section 230, 133 Stat. 13 (2019).

Page 3 of 17
*United States' Opposition to Defendant's Motion to Dismiss,
Cross-Motion to Strike Improper Defenses, and Memorandum in Support*

landowner's non-justiciable and improper challenges to the taking, to allow the parties to focus their resources on the determination of just compensation.

## II. FACTS AND PROCEDURAL BACKGROUND RELEVANT TO THE INSTANT OPPOSITION AND CROSS-MOTIONS

### a. The United States' Condemnation

7. On December 18, 2020, the United States initiated this condemnation proceeding to acquire 4.587 acres in Starr County to construct, install, operate, and maintain roads, fencing, vehicle barriers, security lighting, cameras, sensors, and related structures designed to help secure the United States/Mexico border. Declaration of Taking, Schedule B.[16] The United States identified the Landowner as an interested party in the subject property. *Id*., Schedule G.

8. The United States filed a Complaint and a Declaration of Taking to acquire the subject property.[17] The United States acquired the subject property in fee simple, subject to existing easements for public roads and highways, public utilities, railroads, and pipelines; and subject to all interests in mineral rights and appurtenant rights for the exploration, development, production and removal of said minerals; and reserving to the landowners, "reasonable access to and from the owners' lands lying between the Rio Grande River and the border barrier through opening(s) or gate(s) in the border barrier." Declaration of Taking, Schedule E.[18] The Complaint and Declaration of Taking state the authority for the taking, the public purpose (use) for which the property was taken, the legal description of the property, the survey of the land to be condemned, the estate taken (acquired), the estimated just compensation and each known person who have or

---

[16] Dkt. No. 2-1.
[17] Dkt. No. 1 and 2.
[18] Dkt. No 2-1.

Page 4 of 17
*United States' Opposition to Defendant's Motion to Dismiss,
Cross-Motion to Strike Improper Defenses, and Memorandum in Support*

claim an interest in the property.[19] Loren Flossman, Acquisition Program Manager, United States Border Patrol, United States Customs and Border Protection ("CBP"), Department of Homeland Security (DHS), signed the Declaration of Taking, declaring "the rights acquired are taken in the name of and for the use of the United States of America under authority and for the public purpose stated herein." Declaration of Taking.[20]

9. This taking was filed under three statutes by which Congress has authorized the Attorney General to condemn property. Declaration of Taking, Schedule A.[21] The General Condemnation Act, 40 U.S.C. § 3113, directs that a government official "who is 'authorized to procure real estate for . . . public uses' makes an application to the Attorney General who, within 30 days, must initiate condemnation proceedings." *See also Kirby Forest Indus., Inc. v. United States*, 467 U.S. 1, 3-4 (1984) (quoting 40 U.S.C. § 257, re-codified as 40 U.S.C. § 3113). The Declaration of Taking Act, 40 U.S.C. § 3114, permits the Government, "at any time before judgment" in a condemnation suit, to file "a declaration of taking signed by the authority empowered by law to acquire the lands [in question], declaring that said lands are thereby taken for the use of the United States." The Immigration and Nationality Act, 8 U.S.C. § 1103, further permits the Attorney General to acquire property to secure the United States' international border when the United States and the owner of the property in question "are unable to agree upon a reasonable price."

---

[19] Dkt. Nos. 1-1 and 2-1.
[20] Dkt. No. 2.
[21] Dkt. No. 2-1.

Page 5 of 17
*United States' Opposition to Defendant's Motion to Dismiss,
Cross-Motion to Strike Improper Defenses, and Memorandum in Support*

10. Schedule A of the Declaration of Taking also identifies the funds to be used to acquire this property as funds appropriated in the Consolidated Appropriations Act of 2019, Public Law 116-6, div. A, tit. II, Section 230(a), 133 Stat. 13.[22]

11. On January 13, 2021, the United States deposited the estimated amount of just compensation into the Registry of the Court[23] in accordance with 40 U.S.C. 3114. The Declaration of Taking Act, 40 U.S.C. § 3114 (b), provides that "[o]n filing the declaration of taking and depositing in the court, to the use of the persons entitled to the compensation, the amount of the estimated compensation stated in the declaration: (1) title to the estate or interest specified in the declaration vests in the Government; (2) the land is condemned and taken for the use of the Government; and (3) the right to just compensation for the land vests in the persons entitled to the compensation."

### b. The Landowner's Motion To Dismiss And Answer

12. On January 13, 2021, the Landowner filed his Motion to Dismiss pursuant to Rule 71.1(i)(1)(C).[24] Fed. R. Civ. P. 71.1(i)(1)(C) provides that "[a]t any time before compensation has been determined and paid, the court may, after a motion and hearing, dismiss the action as to a piece of the property. But if the plaintiff has already taken title, a lesser interest, or possession as to any part of it, the court must award compensation for the title, lesser interest, or possession taken."

13. In his Motion, the Landowner argues: (1) that the power of eminent domain is vested in Congress, which may impose binding limitation on the Executive, and (2) that the taking

---

[22] Dkt No. 2-1.
[23] Dkt. No. 11.
[24] Dkt. No. 10.

Page 6 of 17
*United States' Opposition to Defendant's Motion to Dismiss,
Cross-Motion to Strike Improper Defenses, and Memorandum in Support*

described by the Government in this case exceeds statutory limits established by Congress.[25] The Landowner asserts such actions violate the Administrative Procedures Act ("APA") and agency actions beyond delegated authority are *ultra vires*. *Id.*

14. The Answer lists three objections. The landowner first repeats the arguments set forth in his Motion.[26] He also objects to funds appropriated by Congress to the Department of Defense (DOD), to the extent the United States intends to use the funds for the taking of the subject property.[27] Finally the Landowner objects, to the extent the United States has not cited laws that give it the authority to take, it therefore has not complied with 40 U.S.C. § 3114.[28] As explained below, such challenges are either not legal defenses to a federal condemnation action or inconsistent with case law. Accordingly, the court should deny the Landowner's Motion and strike their three objections to the Complaint.

### III. ARGUMENT

15. Unique among federal civil actions, affirmative eminent domain proceedings are governed by Rule 71.1. All defenses or objections must be raised in the answer, and federal law strictly defines the legally cognizable defenses to a taking. Once the United States sets forth the nature and extent of the interests to be acquired through condemnation, "[a] court may then inquire only whether the use for which private property is authorized by the legislature to be taken, is in fact a public use." *United States v. 101.88 Acres of Land, et al.*, 616 F.2d 762, 767 (5th Cir. 1980), citing *Shoemaker v. United States,* 147 U.S. 282, 298 (1893). All other challenges or counterclaims are improper. *United States v. 162.20 Acres of Land, et al.*, 639 F.2d 299, 303 (5th Cir. 1981)

---

[25] *Id.*
[26] Dkt. No. 9 ¶ 19-20.
[27] *Id* at ¶ 21.
[28] *Id* at ¶ 22.

Page 7 of 17
*United States' Opposition to Defendant's Motion to Dismiss,
Cross-Motion to Strike Improper Defenses, and Memorandum in Support*

("The sole defense which may be raised against the condemnation itself is that of lack of authority to take in the petitioner."). *See also* Fed. R. Civ. P. 71.1(e) (defendant may serve either a notice of appearance or an answer but "[n]o other pleading or motion asserting any additional defense or objection is allowed").

16.     Here, the Landowner does not dispute that this taking is for a clear public purpose – securing the United States' Border with Mexico.[29] Only one of the Landowner's objections in their Answer, and their sole objection in the Motion disputes the United States authority to take.[30] But the objections the Landowner raised, to the alleged use of DOD funds and to the failure to cite additional authority to take, simply are not defenses to condemnation here. *See 162.20 Acres*, 639 F.2d at 303. In eliminating these meritless, non-justiciable, and improper challenges to the taking that the landowner raises, the Court will permit parties to address the ultimate issue in this case – determination of just compensation.

    a. **The Landowner's Motion To Dismiss Is Improper And Without Legal Merit**

        1. **The Federal Rules Of Civil Procedure Do Not Permit A Landowner To Move To Dismiss This Condemnation Action**

17.     As a preliminary matter, Rule 71.1(e)(2) does not permit a landowner to move to dismiss a condemnation action. As this Court did in *United States v. 0.996 Acres of Land, et al.*, this Court should dismiss this motion as improperly filed. 2009 WL 10691340 at *2 (S.D. Tex. Aug. 4, 2009). *See also* Fed. R. Civ. P. 71.1(e) (defendant may serve either a notice of appearance or an answer but "[n]o other pleading or motion asserting any additional defense or objection is allowed").

---

[29] Dkt Nos. 9 and 10.
[30] *See* Dkt. No. 10 Generally; Dkt. No. 9 ¶ 19-20.

Page 8 of 17
*United States' Opposition to Defendant's Motion to Dismiss,
Cross-Motion to Strike Improper Defenses, and Memorandum in Support*

18. Furthermore, the Landowner filed his Motion pursuant to Rule 71.1(i)(1)(C), but failed to include and consider the complete text of Fed. R. Civ. P. 71.1(i)(1)(C) in the standard of review provided in his motion to dismiss.[31] Fed. R. Civ. P. 71.1(i)(1)(C) provides that "[a]t any time before compensation has been determined and paid, the court may, after a motion and hearing, dismiss the action as to a piece of the property. But if the plaintiff has already taken title, a lesser interest, or possession as to any part of it, the court must award compensation for the title, lesser interest, or possession taken." The Declaration of Taking Act, 40 U.S.C. § 3114 (b), provides that "[o]n filing the declaration of taking and depositing in the court, to the use of the persons entitled to the compensation, the amount of the estimated compensation stated in the declaration: (1) title to the estate or interest specified in the declaration vests in the Government; (2) the land is condemned and taken for the use of the Government; and (3) the right to just compensation for the land vests in the persons entitled to the compensation." Here the United States has already taken title to the property after filing its Declaration of Taking[32] and depositing the estimated amount of just compensation into the Registry of the Court[33] in accordance with 40 U.S.C. 3114. Therefore, the Court should dismiss the landowner's Motion because, pursuant to federal condemnation law, the United States already has title to this property and dismissal is improper.

### 2. The Motion To Dismiss Is Predicated Upon An Incorrect And Incomplete Statutory Interpretation

19. In addition to the inability to move to dismiss this condemnation action pursuant to the Federal Rules of Civil Procedure, the Landowner asserts that the United States' stated public purpose exceeds the authority granted by Congress, because Section 230(a) of the Consolidated

---

[31] Dkt. No. 10 at 5.
[32] Dkt. No. 2.
[33] Dkt. No. 11.

Page 9 of 17
*United States' Opposition to Defendant's Motion to Dismiss,
Cross-Motion to Strike Improper Defenses, and Memorandum in Support*

Appropriations Act of 2019 "provides that funds 'shall be available *only*'' for the construction of pedestrian fencing[34], and "that Congress meant what it said in statutory text: money is available for the construction of fencing, but not roads or other associated infrastructure."[35] This argument is without legal or factual merit.

20. First, the United States agrees that "words in statutes are typically construed according to their ordinary, contemporary, common meanings." *Cascabel Cattle Co., LLC v. United States*, 955 F.3d 445, 451 (5th Cir. 2020). But, as the Fifth Circuit also noted in *Cascabel Cattle Co.*, "[i]nterpretation of a word or phrase depends upon reading the whole statutory text . . . ." The Landowner, however, omits a key component of the statutory provision on which he relies.[36] Section 230(a) of the Consolidated Appropriations Act of 2019 states, "[o]f the total amount made available under U.S. Customs and Border Protection – Procurement, Construction, and Improvements, $2,370,222,000 shall be available only as follows: (1) $1,375,000,000 is for the construction of primary pedestrian fencing. . . ." Subsection (1) of this provision does **not** state that $1,375,000,000 is "*only* for the construction of primary pedestrian fencing," as the Motion asserts. The word "only" is set forth in Section 230(a), not subsection (1). This word therefore does not modify "pedestrian fencing" specifically and does not limit the appropriated funds to only the construction of a physical pedestrian fence. Rather, "only" modifies the $2.37 billion appropriated in Section 230(a). Subsections (1), (2) and (3) then identifies certain, general, categories of expenditures for which funds have been appropriated.

### 3. **The United States Has The Authority To Use Funds Appropriated For "Fencing" For Expenditures Rationally Related To Constructing Fencing For Border Security Purposes**

---

[34] Dkt. No. 10 at 8.
[35] Dkt No. 10 at 10.
[36] Dkt No. 10 at 8-11.

Page 10 of 17
United States' Opposition to Defendant's Motion to Dismiss,
Cross-Motion to Strike Improper Defenses, and Memorandum in Support

21. Even if Section 230(a)(1) only appropriated funds for the use in constructing pedestrian fencing, which as explained above it does not, "the authority to condemn is not negative or affected by the limitations fixed upon costs in the authorization of a Government official to purchase property for a particular use." *United States v. Certain Land Situated in City of Detroit, Wayne County, State of Mich.*, 873 F.Supp. 1050, 1055 (E.D. Mich. 1994) (citing *United States v. Certain Real Estate Lying on the South Side of Broad Street, in the City of Nashville, Tenn.*, 217 F.2d 920 (6th Cir. 1954).

22. The construction of roads to access this fencing is rationally related to, and necessary to accomplish the Congressionally authorized purpose of, fencing being constructed to secure the border between the United States and Mexico, and therefore permit these funds to be expended for such roads. The public purpose set out in the Declaration of Taking[37] is the same purpose asserted in all of the permanent takings made by the United States with respect to securing the United States/Mexico Border. As stated in *United States v. 0.996 Acres of Land, et al.*, this Court has repeatedly held that this purpose is a valid public purpose for exercising its eminent domain power under the Fifth Amendment to the United States Constitution. 2009 WL 10691340 (S.D. Tex. Aug. 4, 2009). A court cannot review or revise the stated purpose for a taking as set out in a declaration of taking. *U.S. v. 2,606.84 Acres of Land,* 432 F.2d 1286 (5th Cir. 1970). The necessity of a particular taking is non-justiciable, subject to an extremely narrow exception. *See id.*

23. The Supreme Court in *Caitlin v. United States* "did indicate that the landowner has a right to question the validity of a taking as not being for a purpose authorized by the statute under which the proceeding is brought." *U.S. v. 2,606.84 Acres of Land in Tarrant County, Tex.*, 432

---

[37] Dkt No. 2.

Page 11 of 17
*United States' Opposition to Defendant's Motion to Dismiss,
Cross-Motion to Strike Improper Defenses, and Memorandum in Support*

F.2d 1286 at 1290 (5th Cir. 1970). In *U.S. v. 2,606.84 Acres*, Landowners objected to the United States taking on the grounds that "the taking transgressed legislative purposes and that the proposed construction departed from authorized project specifications." *Id*. The Court held, however, that, "once Congress approved the Benbrook Dam, the taking for any purpose associated with that project was an authorized purpose, and the landowner cannot be heard to complain that the condemnation was not necessary to the dam's construction or operation." *Id.* at 1290.

24. The Court continued, stating that "[t]he only exception to this rule would occur if the delegated official so overstepped his authority that no reasonable man could conclude that the land sought to be condemned had some association with the authorized project. In such a case alone could the taking be considered arbitrary or capricious as those terms are used in condemnation proceedings." *Id.* Thus, for the Landowner to succeed in the instant case, he must prove that the United States acted in bad faith or so capriciously and arbitrarily that the action was without an adequate determining principle. The Landowner has not met this burden.

25. Section 230(a) of the Consolidated Appropriations Act of 2019, authorizes funds for: (1) construction of primary pedestrian fencing, including levee pedestrian fencing, in the Rio Grande Valley Sector; (2) the acquisition and deployment of border security technologies and trade and travel assets and infrastructure and non-intrusive inspection equipment at ports of entry; and (3) for construction and facility improvements, for human needs, for Office of field Operations and facilities, and for Border Patrol station facility improvements. The United States' stated intention is to use the property taken to construct fencing and for related functions necessary to secure the United States/Mexico border as stated in the public purpose. Schedule B.[38]

---

[38] Dkt. No. 2-1.

Page 12 of 17
*United States' Opposition to Defendant's Motion to Dismiss,
Cross-Motion to Strike Improper Defenses, and Memorandum in Support*

26. The United States' stated public purpose to construct, install, operate, and maintain roads, fencing, vehicle barriers, security lighting, cameras, sensors, and related structures designed to help secure the United States/Mexico border is reasonably related to the public purpose of securing the United States/Mexico border, and no reasonable person could conclude otherwise. Once Congress approved funding for a pedestrian fence, a taking for any purpose associated with this project is an authorized purpose. *See U.S. v. 2,606.84 Acres of Land in Tarrant County, Tex.*, 432 F.2d 1286, 1290 (5th Cir. 1970); *United States v. 14.02 Acres of Land*, 547 F.3d 943, 951 (9th Cir. 2008) ("When Congress mandates the construction of a new high-voltage transmission line and appropriates funds to carry it out, it implies, by necessity if not common sense, the authority on the part of the executing agency to acquire land on which the transmission line may be constructed." (citing *City of Davenport v. Three-Fifths of an Acre of Land, More or Less, Located in the City of Moline, Rock Island County*, 252 F.2d 354, 356 (7th Cir. 1958) (explaining that actions necessary to accomplish duly enacted directives of Congress, such as building fences along the United States Mexico border, "represents a perfect example of the application of the rule of implied necessity and such a rule of implied necessity is hereby applied to this case. It is unnecessary to marshal an exhaustive line of authorities in support of this common sense approach.")). Since no reasonable person could conclude that the estate taken lacks some association with securing the United States/Mexico border and constructing the border fence, the United States does possess the authority to acquire property to construct roads associated with the border fence, and this Court lacks jurisdiction to consider the necessity of the taking under the stated purpose, and should dismiss Landowner's Motion and strike landowner's objection as non-justiciable.

Page 13 of 17
*United States' Opposition to Defendant's Motion to Dismiss,
Cross-Motion to Strike Improper Defenses, and Memorandum in Support*

    b. **The Court Should Strike The Landowner's Improper Objections And Defenses**

    27.    In addition to opposing the Landowner's Motion, the United States respectfully cross moves the Court to strike their improper objections and defenses to the condemnation proceeding, the Complaint, and the Declaration of Taking. As discussed above, the Landowner improperly objects that the United States exceeded Congressional authorization. The Landowner also objects to funds appropriated by Congress to the Department of Defense (DOD), to the extent the United States intends to use said funds for the acquisition of the subject property.[39] Finally, the Landowner objects to the extent that the United States has not cited laws that give authority to take, in compliance with 40 U.S.C. § 3114.[40] These challenges are not legal defenses and lack legal merit and should be stricken.

    1.    **Standard Of Review**

    28.    Under Rule 12(f), a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." A motion to strike pursuant to Rule 12(f) "is proper when the defense is insufficient as a matter of law." *Kaiser Aluminum & Chemical Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1057 (5th Cir. 1982) (granting a motion to strike the defendant's antitrust defense). As the Ninth Circuit has explained, the function of a Rule 12(f) motion "is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983). Similarly, the Seventh Circuit has explained that a motion to strike is "a useful and appropriate tool for weighing the legal implications to be drawn from uncontroverted facts." *United States v. 416.81 Acres of Land, et al.*, 514 F.2d 627, 631 (7th Cir. 1975).

---

[39] Dkt. No. 9 at ¶ 21.
[40] *Id* at ¶ 22.

Page 14 of 17
*United States' Opposition to Defendant's Motion to Dismiss,
Cross-Motion to Strike Improper Defenses, and Memorandum in Support*

29. In federal eminent domain cases, federal courts routinely dismiss objections to takings when the objections fail as a matter of law. *162.20 Acres*, 639 F.2d at 303; *416.81 Acres*, 514 F.2d at 630-32; *729.773 Acres, et al.*, 531 F. Supp. 967, 971-74 (D. Hawaii); *United States v. 2.9 Acres of Land, et al.*, 554 F. Supp. 529, 532 (D. Mont. 1982). For the purposes of a motion to strike, well pleaded facts must be accepted as true, but the Court need not accept conclusions of law contained therein. *See Kaiser Aluminum*, 677 F.2d at 1057 (rejecting a party's legal conclusions regarding the application of the statute of limitations in anti-trust cases).

### 2. **Landowner's Legally Insufficient Defenses And Non-Justiciable Objections**

30. Landowner's sole challenge to the United States' ability to use funds appropriated in the Consolidated Appropriations Act of 2019 for the purpose stated in the Declaration of Taking is legally insufficient as explained above. For the same reasons that the Court should deny the Motion, the Court should strike the objection from the Answer.

31. The Landowner "invokes the APA [5 U.S.C. § 706(2)] as a defense to the taking,"[41] and asserts that "this Court must invalidate the taking pursuant to the Administrative Procedures Act. 5 U.S.C. § 706(2)."[42] An alleged failure to comply with the Administrative Procedures Act is a claim separate from a condemnation proceeding, and is not a defense to, or defeat, a taking. *See United States ex. rel. Tenn. Valley Auth. v. Easements and Rights of Way over a Total of 15.69 Acres of Land, More or Less, In Gordon County, Ga.*, 589 F.Supp.2d 1349, 1362 (ND. Ga. 2008).

32. The Landowner also objects to the use of funds appropriated by Congress to the Department of Defense ("DOD") to the extent the Government intends to use those funds in this taking.[43] But the United States identified the source of funds used to acquire the subject property

---

[41] Dkt No. 10 at 7.
[42] Dkt No. 9 ¶ 20.
[43] Dkt. No. 9 ¶ 21.

Page 15 of 17
*United States' Opposition to Defendant's Motion to Dismiss,
Cross-Motion to Strike Improper Defenses, and Memorandum in Support*

in the Declaration of Taking.[44] It does not include funds transferred from the DOD. Therefore, this objection is moot.

33. The Landowner also objects that the United States fails to give authority to take the subject property, and therefore is not in compliance with 40 U.S.C. § 3114.[45] But the Declaration of Taking filed in this case specifically states the authority under which the land is taken (including 40 U.S.C. § 3113, 8 U.S.C. § 1103(b)(3) and the 2019 CAA) and therefore on its face complies with 40 U.S.C. § 3114.[46]

## IV. CONCLUSION

Based on the foregoing, the United States request that this Court deny Defendant's Motion to Dismiss and to strike all defenses from the Defendant's Answer and Objections.

Respectfully submitted,

**RYAN K. PATRICK**
United States Attorney
Southern District of Texas

By: s/ *Hilda M. Garcia Concepcion*
**HILDA M. GARCIA CONCEPCION**
Assistant United States Attorney
Southern District of Texas No.3399716
Puerto Rico Bar No. 15494
1701 W. Bus. Highway 83, Suite 600
McAllen, TX 78501
Telephone: (956) 618-8004
Facsimile: (956) 618-8016
E-mail: Hilda.Garcia.Concepcion@usdoj.gov
Attorney in Charge for Plaintiff

---

[44] Dkt. No. 2; Schedule A.
[45] Dkt. No. 9 ¶ 22.
[46] Dkt. No. 2.

Page 16 of 17
*United States' Opposition to Defendant's Motion to Dismiss,
Cross-Motion to Strike Improper Defenses, and Memorandum in Support*

**CERTIFICATE OF SERVICE**

I, Hilda M. Garcia Concepcion, Assistant United States Attorney for the Southern District of Texas, hereby certify that on this 2nd day of February 2021, a copy of the foregoing was served on all parties in accordance with the Federal Rules of Civil Procedure.

*s/ Hilda M. Garcia Concepcion*
**HILDA M. GARCIA CONCEPCION**
Assistant United States Attorney

Page 17 of 17
*United States' Opposition to Defendant's Motion to Dismiss,
Cross-Motion to Strike Improper Defenses, and Memorandum in Support*